IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

IN RE: JEREMY MONTRELL WINTERS          NO. 24-13917-SDM

**FIRSTBANK**                                                              **MOVANT**

VS.

**JEREMY MONTRELL WINTERS, DEBTOR,**
**KONEEKA THOMAS, CODEBTOR**
**AND TODD JOHNS, TRUSTEE**                                **RESPONDENTS**

## MOTION TO ABANDON COLLATERAL AND LIFT STAY AND CODEBTOR STAY

FirstBank brings this motion to abandon collateral and lift and terminate the automatic stays of 11 U.S.C. §§ 362 and 1301.

1. The Debtor and codebtor are indebted to FirstBank under a Promissory Note and Security Agreement, a copy of which is attached as Exhibit "A".

2. As collateral for the indebtedness due, the Debtor and codebtor pledged to FirstBank a 2021 Hamilton Manufactured Home as evidenced by the certificate of title attached as Exhibit "B".

3. The Debtor has defaulted on the obligation to maintain insurance on the Manufactured Home. The Debtor's prior insurance policy has been canceled, and the Debtor has not provided proof of present insurance coverage. The Debtor is obligated to locate, obtain and maintain insurance which is paid from Debtor's escrow with First Bank. FirstBank is entitled to recover its attorney fees and expenses incurred in bringing this motion. FirstBank requests that upon termination of the automatic stays, such termination shall become immediately effective and enforceable and shall not be stayed by Bankruptcy Rule 4001 (a)(3).

WHEREFORE, PREMISES CONSIDERED, FirstBank requests that this Court abandon its collateral and lift and terminate the automatic stays of 11 U.S.C. §§ 362 and 1301 and grant such other relief as is necessary under the circumstances.

DATED:  September 10, 2025

**FIRSTBANK**

By:   /s/ Jeff Rawlings
       Its Attorney

**CERTIFICATE OF SERVICE**

I served a copy of the foregoing motion on September 10, 2025 by mail upon Jeremy Montrell Winters, 2163 Attala Road 2127, McCool, MS 39108, Koneeka Thomas, 2163 Attala Road 2127, McCool, MS 39108 and via the ECF notification service upon Thomas C. Rollins, Jr., Todd S. Johns and the Office of the U.S. Trustee.

/s/ Jeff Rawlings
Jeff Rawlings

Jeff Rawlings
Rawlings & MacInnis, P.A.
P.O. Box 1789
Madison, MS 39130-1789
601-898-1180
jeff@rawlingsmacinnis.net
MSB # 4642

**Exhibit A**

| | LOAN NAME | | NOTE DATE | |
| --- | --- | --- | --- | --- |
| | Jeremy M Winters | | 06/14/21 | |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $61,877.52 | Not Applicable | 8.990% | 06/14/44 | Consumer |
| | | Creditor Use Only | | |

## PROMISSORY NOTE, SECURITY AGREEMENT AND TRUTH-IN-LENDING DISCLOSURES
(Consumer - Closed End)

**DATE AND PARTIES.** The date of this Promissory Note, Security Agreement and Truth-In-Lending Disclosures (Loan Agreement) is June 14, 2021. The parties and their addresses are:

**LENDER:**
  **FIRSTBANK**
  211 Commerce Street
  Suite 300
  Nashville, TN 37201
  Telephone:

**BORROWER:**
  **JEREMY M WINTERS**
  3409 Attala Road 2126
  McCool, MS 39108

  **KONEEKA S THOMAS**
  3409 Attala Road 2126
  McCool, MS 39108

The pronouns "I," "me," and "my" refer to each Borrower signing this Loan Agreement, individually and together with their heirs, successors and assigns, and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Loan Agreement. "You" and "Your" refer to the Lender, any participants or syndicators, successors and assigns, or any person or company that acquires an interest in the Loan. Loan Documents refer to all the documents executed as a part of or in connection with the Loan. Property means any property, real, personal or intangible, that secures my performance of the obligations of this Loan Agreement. Rates and rate change limitations are expressed as annualized percentages. All dollar amounts will be payable in lawful money of the United States of America.

| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | AMOUNT FINANCED<br>The amount of credit provided to me or on my behalf. | TOTAL OF PAYMENTS<br>The amount I will have paid when I have made all scheduled payments. |
| --- | --- | --- | --- |
| 9.364% | $86,517.45 | $60,115.82 | $146,633.27 |

### INTEREST RATE AND PAYMENT SUMMARY

| | Rate & Monthly Payment |
| --- | --- |
| Interest Rate | 8.990% |
| Principal + Interest Payment | $531.28 |
| Estimated Taxes + Insurance (Escrow) | $139.12 |
| **Total Estimated Monthly Payment** | **$670.40** |

**No Guarantee to Refinance.** There is no guarantee that you will be able to refinance to lower your rate and payments.
**Demand.** This loan has a demand feature.
**Security.** I am giving a security interest in the following goods or property being purchased:

Mobile Home (Personal Prop./Residence), 2021 Hamilton Hodges

**Filing Fees.** Non-Real Estate Filing Fee: $39.00.
**Late Charge.** If a payment is more than 10 days late, I will be charged 5.000 percent of the Amount of Payment or $500.00, whichever is less.
**Prepayment.** If I pay off early, I will not have to pay a penalty.
**Assumption.** Someone buying the Property securing the obligation cannot assume the remainder of the obligation on the original terms.
**Contract Documents.** I will see my contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**1. PROMISE TO PAY.** For value received, I promise to pay you or your order the principal sum of $61,877.52 (Principal) plus interest at the rate of 8.990 percent (Interest Rate) from June 14, 2021 on the unpaid Principal balance until this Loan Agreement matures or this obligation is accelerated.

After maturity or acceleration, interest will accrue on the unpaid Principal balance of this Loan Agreement at the Interest Rate in effect from time to time, until paid in full. Any amount assessed or collected as interest under the terms of this Loan Agreement will be limited to the maximum lawful amount of interest allowed by applicable law. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me. The amount assessed or collected on this Loan Agreement is authorized by the Tennessee Home Loan Act (Chapter 15 of the Commercial Instruments) and Transactions law (Tenn. Code Ann. §§ 47-15-101 – 47-15-104). Other than any odd first period, interest will accrue using a counting days method that assumes equal intervals between scheduled payments.

2. **ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, these additional fees and charges.

   A. **Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay this Loan Agreement before the scheduled maturity date.
   **Property Taxes.** A(n) Property Taxes fee of $660.32 payable from the loan proceeds.
   **Homeowner's Insurance Reserves.** A(n) Homeowner's Insurance Reserves fee of $169.78 payable from the loan proceeds.
   **MS Prorated County Tax (R).** A(n) MS Prorated County Tax (R) fee of $577.78 payable from the loan proceeds.
   **Homeowner's Insurance (SL).** A(n) Homeowner's Insurance (SL) fee of $679.00 payable from the loan proceeds.
   **Non-RE Filing.** A(n) Non-RE Filing fee of $39.00 payable from the loan proceeds.
   **Flood Determination -Life of Loan (SL).** A(n) Flood Determination -Life of Loan (SL) fee of $10.00 payable from the loan proceeds.
   **Credit Report.** A(n) Credit Report fee of $12.64 payable from the loan proceeds.
   **Loan Origination.** A(n) Loan Origination fee of $1,751.70 payable from the loan proceeds.

3. **REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Loan Agreement.

   A. **Late Charge.** If a payment is more than 10 days late, I will be charged 5.000 percent of the Amount of Payment or $500.00, whichever is less. I will pay this late charge promptly but only once for each late payment.

   B. **Returned Payment Charge.** I agree to pay a fee not to exceed $20.00 for each check, electronic payment, negotiable order of withdrawal or draft I issue in connection with the Loan that is returned because it has been dishonored.

4. **PAYMENT.** I agree to pay this Loan Agreement on demand, but if no demand is made, I agree to pay this Loan Agreement in 276 payments. I will make 275 payments of $531.28 beginning on July 14, 2021, and on the 14th day of each month thereafter. A single, final payment of the entire unpaid balance of Principal and interest will be due June 14, 2044.

Payments will be rounded up to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Each payment I make on this Loan Agreement will be applied first to escrow that is due, then to interest that is due, then to principal that is due, then to credit insurance premiums that are due, then to late charges that are due, and finally to any charges that I owe other than principal and interest. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment. You may change how payments are applied in your sole discretion without notice to me. The actual amount of my final payment will depend on my payment record.

5. **PREPAYMENT.** I may prepay this Loan Agreement in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

6. **LOAN PURPOSE.** The purpose of this Loan is Purchase Mobile Home no R/E -Personal.

7. **SECURITY.** The Loan is secured by Property described in the SECURITY AGREEMENT section of this Loan Agreement.

8. **SECURITY AGREEMENT.**

   A. **Secured Debts.** This Security Agreement will secure the following debts (Secured Debts), together with all extensions, renewals, refinancings, modifications and replacements of these debts:
      (1) Sums Advanced under the terms of this Loan Agreement. All sums advanced and expenses incurred by you under the terms of this Loan Agreement.

   B. **Limitations on Cross-collateralization.** The Loan is not secured by a previously executed security instrument if a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. The Loan is not secured by a previously executed security instrument if you fail to fulfill any necessary requirements or fail to conform to any limitations of the Real Estate Settlement Procedures Act, (Regulation X), that are required for loans secured by the Property or if, as a result, the other debt would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

   The Loan is not secured by a previously executed security instrument if you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act, (Regulation Z), that are required for loans secured by the Property.

   C. **Security Interest.** To secure the payment and performance of the Secured Debts, I grant you a security interest in all of the Property described in this Security Agreement that I own or have sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property (including, but not limited to, all parts, accessories, repairs, replacements, improvements, and accessions to the Property). Property is all the collateral given as security for the Secured Debts and described in this Security Agreement, and includes all obligations that support the payment or performance of the Property. "Proceeds" includes cash proceeds, non-cash proceeds and anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property.

   Property also includes any original evidence of title or ownership whether evidenced by a certificate of title or ownership, a manufacturer's statement of origin or other document when the Property is titled under any federal or state law. I will deliver the title documents and properly execute all title documents as necessary to reflect your security interest.

   This Security Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and you are no longer obligated to advance funds to me under any loan or credit agreement.

   D. **Property Description.** The Property subject to this Security Agreement is described as follows:
      (1) Motor Vehicle, Mobile Home, Sport Craft, or Trailer. A Mobile Home of Make: Hamilton, Year: 2021, Model: Hodges, Length: 72., Width: 15., VIN/Serial No.: HH21AL05922, and additionally described: 2021 Hamilton Hodges.

   E. **Purchase Money Security Interest.** Payments will be applied first to the non-purchase money portion of the loan, if any, then to the purchase money portion in the order in which the purchase money Property was acquired.

   F. **Duties Toward Property.**
      (1) Protection of Secured Party's Interest. I will defend the Property against any other claim. I agree to do whatever you require to protect your security interest and to keep your claim in the Property ahead of the claims of other creditors. I will not do anything to harm your position.

(2) **Use, Location, and Protection of the Property.** I will use the Property only for personal, family, or household purposes. I will not use the Property in violation of any law.

I will keep the Property in my possession at my address. I will notify you in writing and obtain your prior written consent to any change in location of any of the Property. I will immediately inform you of any loss or damage to the Property. I will not cause or permit waste to the Property.

Until this Security Agreement is terminated, I will not grant a security interest in, or otherwise encumber, any of the Property without your prior written consent. I will pay all taxes and assessments levied or assessed against me or the Property and provide timely proof of payment of these taxes and assessments upon request.

(3) **Additional Duties Specific to Mobile Homes.** It is the intent of the parties that the Mobile Home portion of the Property will be located on a temporary foundation. I agree that the Mobile Home will remain personal property and will not become part of the real estate where it is located. The address and location of the real estate on which the Mobile Home will be located is:

2163 Attala Road 2127, McCool, Mississippi 39108.

If the Mobile Home portion of the Property is titled, I am required to obtain your prior written consent to eliminate the title and declare the Mobile Home as real estate. You may withhold consent in your sole discretion.

G. **Authority To Perform.** I authorize you to do anything you deem reasonably necessary to protect the Property and your security interest in the Property. If I fail to perform any of my duties under this Loan Agreement, you are authorized, without notice to me, to perform the duties or cause them to be performed.

You are authorized, but are not limited, to: pay and discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Property; pay any rents or other charges under any lease affecting the Property; order and pay for the repair, maintenance and preservation of the Property; file any financing statements on my behalf and pay for filing and recording fees pertaining to the Property; place a note on any chattel paper indicating your interest in the Property; take any action you feel necessary to realize on the Property, including performing any part of a contract or endorsing it in my name; handle any suits or other proceedings involving the Property in my name. If you perform for me, you will use reasonable care.

H. **Name and Location.** My name indicated in the DATE AND PARTIES section is my exact legal name. I am located at the address indicated in the DATE AND PARTIES section. I will provide verification of registration and location upon your request. I will provide you with at least 30 days notice prior to any change in my name, address, or state of organization or registration.

I. **Perfection of Security Interest.** I authorize you to file a financing statement and/or security agreement, as appropriate, covering the Property. I will comply with, facilitate, and otherwise assist you in connection with obtaining perfection or control over the Property for purposes of perfecting your security interest under the Uniform Commercial Code. I agree to pay all actual costs of terminating your security interest.

**9. DEFAULT.** I understand that you may demand payment anytime at your discretion. For example, you may demand payment in full if any of the following events (known separately and collectively as an Event of Default) occur:

A. **Payments and Performance.** I fail to make a payment when due or perform any condition or keep any promise or covenant of this or any agreement I have made with you.

B. **Insolvency or Bankruptcy.** I become insolvent or declare bankruptcy.

C. **Death or Incompetency.** I die or am declared legally incompetent.

**10. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Loan Agreement to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law, as applicable.

**11. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor. In addition, I, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Loan Agreement. You may renew or extend payments on this Loan Agreement, regardless of the number of such renewals or extensions. You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer. You may release, substitute or impair any Property securing this Loan Agreement. You, or any institution participating in this Loan Agreement, may invoke your right of set-off. You may enter into any sales, repurchases or participations of this Loan Agreement to any person in any amounts and I waive notice of such sales, repurchases or participations. I agree that any of us signing this Loan Agreement as a Borrower is authorized to modify the terms of this Loan Agreement or any instrument securing, guarantying or relating to this Loan Agreement. Except to the extent prohibited by law, I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

**12. REMEDIES.** After I default, and after you give any legally required notice and opportunity to cure the default, you may at your option do any one or more of the following.

A. **Acceleration.** You may make all or any part of the amount owing by the terms of this Loan Agreement immediately due.

B. **Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

C. **Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

D. **Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of this Loan Agreement, and accrue interest at the highest post-maturity interest rate.

E. **Attachment.** You may attach or garnish my wages or earnings.

F. **Set-Off.** You may set off any amount due and payable under the terms of this Loan Agreement against my right to receive money from you, unless prohibited by applicable law.

G. **Repossession.** You may require me to gather and make the Property available to you. You may repossess the Property so long as the repossession does not involve a breach of the peace. You may sell, lease or otherwise dispose of the Property as provided by law. You may apply what you receive from the disposition of the Property to your expenses, your attorneys' fees and legal expenses (where not prohibited by law), and any debt I owe you. If what you receive from the disposition of the Property does not satisfy the debt, I will be liable for the deficiency (where permitted by law). In some cases, you may keep the Property to satisfy the debt.

Where a notice is required, I agree that ten days prior written notice sent by first class mail to my address listed in this Loan Agreement will be reasonable notice to me under the Tennessee Uniform Commercial Code.

H. **Use and Operation.** You may enter upon my premises and take possession of all or any part of my property for the purpose of preserving the Property or its value, so long as you do not breach the peace. You may use and operate my property for the length of time you feel is necessary to protect your interest, all without payment or compensation to me.

I. **Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**13. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after the occurrence of an Event of Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Loan Agreement or any other Loan Document. Expenses include, but are not limited to, reasonable attorneys' fees, court costs, and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of this Loan Agreement. All

fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**14. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**15. WARRANTIES AND REPRESENTATIONS.** I have the right and authority to enter into this Loan Agreement. The execution and delivery of this Loan Agreement will not violate any agreement governing me or to which I am a party. I will acquire ownership of the Property with the proceeds of the loan.

**16. INSURANCE.** I agree to obtain the insurance described in this Loan Agreement.

   **A. Property Insurance.** I agree to keep the Property insured against the risks reasonably associated with the Property. I will maintain this insurance in the amounts you require. This insurance will last until the Property is released from this Loan Agreement. I may choose the insurance company, subject to your approval, which will not be unreasonably withheld.

   I will have the insurance company name you as loss payee on any insurance policy. I will give you and the insurance company immediate notice of any loss. You may apply the insurance proceeds toward what is owed on the Secured Debts. You may require added security as a condition of permitting any insurance proceeds to be used to repair or replace the Property.

   If you acquire the Property in damaged condition, my right to any insurance policies and proceeds will pass to you to the extent of the Secured Debts.

   I will immediately notify you of cancellation or termination of insurance. If I fail to keep the Property insured, you may obtain insurance to protect your interest in the Property and I will pay for the insurance on your demand. You may demand that I pay for the insurance all at once, or you may add the insurance premiums to the balance of the Secured Debts and charge interest on it at the rate that applies to the Secured Debts. This insurance may include lesser or greater coverages than originally required of me, may be written by a company other than one I would choose, and may be written at a higher rate than I could obtain if I purchased the insurance. I acknowledge and agree that you or one of your affiliates may receive commissions on the purchase of this insurance.

   **B. Flood Insurance.** Flood insurance is not required at this time. It may be required in the future should the property be included in an updated flood plain map. If required in the future, I may obtain flood insurance from anyone I want that is reasonably acceptable to you.

**CREDITOR-PLACED INSURANCE NOTICE.** I am giving you a security interest in the Property described in this Loan Agreement. I am required to maintain insurance on the Property to protect your interest until all debts secured by this Loan Agreement are paid. If I fail to provide evidence of insurance on the Property to you, you may place insurance on the Property and I will be responsible to pay for the costs of that creditor-placed insurance.

**17. ESCROW FOR TAXES AND INSURANCE.** I will pay you amounts for (a) yearly taxes and assessments on the Property which under the law may be superior to this Note, Security Agreement and Truth In Lending Disclosures (if any), (b) yearly leasehold payments or ground rents (if any), (c) yearly premiums for hazard or property insurance (if any), (d) yearly premiums for flood insurance (if any), and (e) yearly premiums for mortgage insurance (if any). I will pay those amounts to you unless you tell me, in writing, that I do not have to do so, or unless the law requires otherwise. I will make those payments at the times you require.

You will estimate from time to time my yearly taxes, assessments, leasehold payments or ground rents and insurance premiums, which will be called the Escrow Items. You will use existing assessments and bills and reasonable estimates of future assessments and bills. The amounts that I pay to you for Escrow Items under this section will be called the Funds. You will collect and hold Funds in an amount not to exceed the maximum amount allowed by law.

You will keep the Funds in a savings or banking institution which has its deposits or accounts insured or guaranteed by a federal or state agency. If you are such an institution, you may hold the Funds. You will use the Funds to pay the Escrow Items. You will give me, without charge, an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds and the reason for each deduction.

You may not charge me for holding or keeping the Funds, for using the Funds to pay Escrow Items, for analyzing my payments of Funds, or for receiving, verifying and totaling assessments and bills. However, you may charge me for these services if you pay me interest on the Funds and if the law permits you to make such a charge. You may require me to pay a one-time charge for an independent real estate tax reporting service used by you in accordance with the Secured Debts, unless applicable law provides otherwise. You will not be required to pay me any interest or earnings on the Funds unless either (i) you and I agree in writing, at the time I signed this Note, Security Agreement and Truth In Lending Disclosures, that you will pay interest on the Funds; or (ii) the law requires you to pay interest on the Funds.

If the Funds held by you exceed the amounts permitted to be held by applicable law, you will account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the funds held by you at any time is not sufficient to pay the Escrow Items when due, you may notify me in writing, and in such case, I will pay you the amount necessary to make up the shortage or deficiency. I shall make up the shortage or deficiency as you direct, subject to the requirements of applicable law.

If, by reason of any default under this Note, Security Agreement and Truth In Lending Disclosures, you declare all Secured Debts due and payable, you may then apply any Funds against the Secured Debts.

When I have paid all of the sums secured, you will promptly refund to me any Funds that are being held by you.

**18. GENERAL PROVISIONS.** If two or more Borrowers sign this Loan Agreement, we are liable to repay jointly and severally. This Loan Agreement is the complete and final expression of the agreement and may not be amended or modified by oral agreement. If any provision of this Loan Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will be enforceable. No present or future agreement securing any other debt I owe you will secure the payment of this Loan if, with respect to this loan, you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act (Regulation Z) or the Real Estate Settlement Procedures Act (Regulation X) that are required for loans secured by the Property or if, as a result, this Loan would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007. This Loan Agreement is governed by the laws of Tennessee, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any correct and complete financial statements or other information you request. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**19. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

ITEMIZATION OF AMOUNT FINANCED

NOTE AMOUNT $61,877.52

| | |
|---|---|
| Amount given to me directly | $0.00 |
| Amount paid on my account | $0.00 |

Amount paid to Lender for:

| | |
|---|---|
| Property Taxes | $660.32 |
| Homeowner's Insurance Reserves | $169.78 |

Prepaid finance charge paid to Lender

| | |
|---|---|
| Loan Origination | $1,751.70 |
| Total prepaid finance charge amount paid to Lender | $1,751.70 |

Amount paid to others on my behalf*:

| | |
|---|---|
| Attala County Tax Assessor | $577.78 |
| Helicon | $679.00 |
| State of MS | $39.00 |
| Equifax | $12.64 |
| Regional Homes | $58,390.00 |

Prepaid finance charge amount paid to others on my behalf

| | |
|---|---|
| ServiceLink | $10.00 |
| Total prepaid finance charge amount paid to others | $10.00 |

LESS: PREPAID FINANCE CHARGE $1,761.70

AMOUNT FINANCED $60,115.82

*Lender may retain or receive portions of these amounts.

20. SIGNATURES. By signing, I agree to the terms contained in this Loan Agreement. I also acknowledge receipt of a copy of this Loan Agreement.

BORROWER:

*/s/ Jeremy M Winters*
Jeremy M Winters

*/s/ Koneeka Thomas*
Koneeka S Thomas

LENDER:
FirstBank
By */s/ R. McGill*
Richard Kevin McGill, MH Credit Manager

# CERTIFICATE OF TITLE

Form # 79-001

## STATE OF MISSISSIPPI

**ORIGINAL**

| VEHICLE IDENTIFICATION NUMBER | MAKE | YEAR | MODEL | BODY | TITLE NUMBER | TITLE TEXT (E.G. UNIT #) |
|---|---|---|---|---|---|---|
| HH21AL05922 | HAMI | 2021 | HODGES | HS | MS1082119680 | |

| TITLE DATE | DATE OF FIRST SALE FOR USE NEW ONLY | NO. CYL | NEW/USED | TYPE OF VEHICLE | ODOMETER - NO TENTHS |
|---|---|---|---|---|---|
| 07/16/2021 | 06/14/2021 | | NEW | MH | EXEMPT |

**OWNER(S)**

WINTERS, JEREMY AND/OR THOMAS, KONEEKA
2163 ATTALA ROAD 2127
MC COOL MS 39108-9498

**BRANDS**

**1ST LIENHOLDER**

FIRST BANK
520 W SUMMIT HILL DR STE 801
KNOXVILLE TN 37902-2006

DATE: 06/14/2021

**2ND LIENHOLDER**

DATE:

**Exhibit B**

**MAIL TO**

FIRST BANK
520 W SUMMIT HILL DR STE 801
KNOXVILLE TN 37902-2006

M81-2

LIEN SATISFACTION: THE UNDERSIGNED HOLDER OF ABOVE DESCRIBED LIEN(S) ON THE MOTOR VEHICLE DESCRIBED HEREON HEREBY ACKNOWLEDGES SATISFACTION THEREOF.

1ST LIEN _____ BY _____
         (LIENHOLDER)          (SIGNATURE AND TITLE)
THIS _____ DAY OF _____ 20____

2ND LIEN _____ BY _____
         (LIENHOLDER)          (SIGNATURE AND TITLE)
THIS _____ DAY OF _____ 20____

IN WITNESS WHEREOF I HAVE HEREUNTO SET MY HAND THIS
THE 16TH DAY OF JULY 20 21

The Mississippi Department of Revenue hereby certifies that on application duly made, the person named herein is registered by this office as the lawful owner of the vehicle described subject to the liens or security interests as may subsequently be filed with the Mississippi Department of Revenue. This certificate of title is issued pursuant to the Mississippi Motor Vehicle Title Law Section 63-21-1, Mississippi Code of 1972, and subject to the provisions thereof.

CONTROL NUMBER: O 03257491

MISSISSIPPI DEPARTMENT OF REVENUE

**VOID IF ALTERED**